## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GEOFFREY LATHAM,                    )
                     PLAINTIFF,    )
                             )
V.                                  )   Civil Action No.: _____
                             )
THE KROGER CO.                      )   JURY TRIAL DEMANDED
                             )
            DEFENDANT.       )

## COMPLAINT

Plaintiff Geoffrey Latham ("Plaintiff") respectfully submits the following Complaint:

## INTRODUCTION

1.    Plaintiff is a former employee of Defendant The Kroger Co. ("Kroger") Plaintiff asserts a claim of age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Additionally, Plaintiff asserts a claim of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII").

1

2.    Plaintiff seeks declaratory and injunctive relief, back pay and lost benefits, front pay, liquidated damages, compensatory damages, punitive damages, and attorneys' fees and costs of litigation to remedy these civil rights violations.

## JURISDICTION AND VENUE

3.    Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

4.    This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

5.    Plaintiff is a resident of Sugar Hill, Georgia and submits himself to the jurisdiction of this Court.

6.    Defendant The Kroger Co. is a foreign profit corporation licensed to conduct business in the State of Georgia.

7.    At all times relevant to this action, Defendant conducted business, maintained facilities, and derived substantial revenue in the State of Georgia and is subject to the jurisdiction and venue of this Court.

8.     Defendant may be served with process by serving a copy of the Complaint and Summons on its registered agent, CSC of Cobb County, Inc., 192 Anderson Street S.E., Suite 125, Marietta, GA 30060.

9.     Defendant is an employer as defined by Title VII and the ADEA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Plaintiff has satisfied all administrative prerequisites to perfect his claims of age discrimination and retaliation under the ADEA and gender discrimination under Title VII.   Specifically, he timely filed a Charge of Discrimination and an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

11.     The EEOC investigated, found cause as to Plaintiff's claims, and issued a Letter of Determination.

12.     Plaintiff has now received the Notice of Right to Sue for his claims under Title VII and the ADEA within the last ninety (90) days.

## FACTUAL ALLEGATIONS

13.     The Kroger Co. ("Kroger") is one of the largest retailers in the United States based on annual sales.

14.     Kroger operates approximately 2,750 grocery retail stores in 35 states under a variety of banner names.

15.     Plaintiff worked for Kroger for nearly 40 years.

16.     Plaintiff, male, is 57 years old.

17.     Plaintiff began his employment with Kroger on or about August 29, 1980.

18.     During Plaintiff's career with Kroger, he worked his way up the Company.

19.     Plaintiff began his employment in an entry-level position in 1980, then became a Department Manager in 1987, then became an Assistant Store Manager in 1990, then became Store Manager in 1996, and then a District Human Resources Manger in 2013.

20.     Plaintiff held the District Human Resources Manager role from 2013 until his abrupt demotion in March 2019.

21.     Plaintiff was terminated from Kroger in June 2019.

22.     As a District Human Resources Manager, Plaintiff was responsible for, among other things, driving sourcing, recruiting, selection and onboarding for store positions, conducting interviews and making hiring decisions for store management, collecting and reviewing HR metrics and addressing areas of concern in those metrics.

23.     At the time of Plaintiff's demotion in March 2019, Plaintiff reported to District Manager Latasha Stevens and had a dotted reporting line to Human Resources Director Merritt Henderson.

24.     Stevens in turn reported to Regional Director David Harrington.

25.     Plaintiff received good performance reviews as a District Human Resources Manager.  In fact, Plaintiff's last review score from 2016 was an "Exceeds Expectations."

26.     Plaintiff never received any disciplinary actions as a District Human Resources Manager and had never received any performance feedback.  To the contrary, he has received only positive feedback.

27.     In Plaintiff's position as District Human Resources Manager, Plaintiff was made aware that there was a push at Kroger to get rid of older tenured managers from their positions as Kroger believed these older managers were clogging up opportunities for younger managers.

28.     In fact, Kroger referred to these older managers as "old timers," a term that they used to describe someone that they felt was not adapting to new processes and procedures, and was clogging the pipeline for younger individuals.

29.     During Plaintiff's tenure as a District Human Resources Manager, Plaintiff witnessed at least five 30-year plus managers be terminated or forced into retirement where no job-related performance issues existed.

30.     For example, older managers got placed on unjustified and unwarranted Performance Improvement Plans ("PIPs") in an effort to push them out.

31.     In fact, Stevens told Plaintiff that two older and tenured managers who were being placed on a PIP would not be successful in their PIP, before they had even begun the PIP.   In other words, the PIP was not legitimate as the Company knew it was going to be terminating these individuals regardless of whether they were successful in their PIP.

32.     Plaintiff told Henderson about the unlawful conduct occurring with these two older managers.

33.     Moreover, as part of the PIP process, Stevens was required to meet with these managers regarding their progress on the PIPs, however, Stevens falsified the PIP documents to claim that she had met with these managers regarding their PIPs on specific dates, when she had not met with the managers on those dates.

34.     Specifically, Stevens would document that she met with these managers regarding their PIPs on dates that she was at the stores where these managers were

located, even though she had not met with the managers about their PIPs during her visit.

35.     There was also an open push to promote females to open positions.

36.     On or about March 14, 2019, Plaintiff received a call from the division HR office stating that Henderson wanted to meet with Plaintiff at the division office at 9AM.

37.     When Plaintiff arrived at the office, he met with Henderson and Rebecca Clark, Manager of Labor Relations, who attended the meeting as a witness.

38.     In that meeting, Plaintiff was told that he was being removed from his position as a District Human Resources Manager and would be placed in a Store Manager position.  Plaintiff was told that this change was being made based on his job performance.

39.     Plaintiff asked for clarification as to why he was being demoted as he was not aware of any performance issues.

40.     Henderson stated that Stevens had told her that she had met with Plaintiff regarding his performance.  Plaintiff told Henderson that was simply not true and that there had been no performance discussions and in fact, the last performance review he received was in 2016 which was an "Exceeds Expectations".

41.    Henderson told Plaintiff that the decision had been made and there would be no further discussion on the issue.

42.    Henderson told Plaintiff that he would be placed at a store in Cumming, Georgia for four weeks to get "reacclimated" to the Store Manager role and then he would be placed as a Store Manager in District M.

43.    Plaintiff was also told that his compensation would be grandfathered only until the end of the year, with no guarantee of a set salary after that date.

44.    The store to which Plaintiff was to be assigned was a low volume store where his salary and bonus potential would have been negatively impacted after his grandfathered compensation ended at the end of the year.

45.    Plaintiff was removed from his position as District Human Resources Manager with no performance discussions, no performance documentation, no progressive discipline, no performance improvement plan, no end-of-year performance review for 2017 (due March 2018), no mid-year performance review in 2018 (due July 2018), and no end-of-year performance review for 2018 (due March 2019).

46.    On or about March 28, 2019, Plaintiff began "training" at a store in Cumming, Georgia.  Plaintiff met with District Manager Tim Nelson and Jim Dixon, Store Manager.

47.     Nelson stated that he "didn't know what happened and didn't need to know" to cause Plaintiff's demotion, but that he would have a store for Plaintiff to run in four weeks.  Nelson told Plaintiff to work with Dixon to get reacclimated to the position and to just "do what Jim does."  In other words, there was no training put in place to prepare Plaintiff for his new role.

48.     Interestingly, ten to twelve years prior, when Plaintiff was a Store Manager, Dixon worked under him as an Assistant Store Manager.  In other words, it was Plaintiff that had trained Dixon to be an Assistant Store Manager and now, Dixon was training Plaintiff.

49.     On or about April 15, 2019, Nelson was reassigned away from the District Manager role and Plaintiff's former Regional Director, Harrington, became District Manager over District M.  Harrington was demoted from Regional Director to District Manager.

50.     On or about April 18, 2019, Plaintiff was notified that there would be a store position opening in the next seven to ten days and that he would need to apply for that role.  Plaintiff had previously been told that he would be placed in a Store Manager role and would not have to go through the application process.

51.     On or about April 26, 2019, the Store Manager position was posted on the website.  It had now been six weeks since Plaintiff had been demoted from the

position of District Human Resources Manager and he was not in a Store Manager position as had been promised nor did there seem to be any plan for him.

52.     On or about May 1, 2019, Plaintiff met with Henderson and Nelson to discuss his concerns that there was no plan in place for his transition to the Store Manager role.  Plaintiff expressed that there was also no training plan put in place and also covered with them everything he had done on his own initiative to prepare for the role including 56 web-based learning modules and scheduling himself for the Food Safety Certification.  Plaintiff requested system access to assist in the learning process, which he never received, and also requested—for the second time—a written document memorializing that his compensation would be grandfathered through the end of the fiscal year.  Plaintiff never received either of these things.

53.     During that meeting, Plaintiff was asked if he wanted to change districts, but the two districts Henderson proposed were over an hour from Plaintiff's house (one of them was two hours away).  Plaintiff said he did not want to transfer districts given the commute and he was then told he could apply for the Store Manager Position in District M—the position that he had been led to believe that he would be placed in without the need for any application process.  Nelson also recommended to Plaintiff that he train with the district staff at a store in Atlanta for the next two weeks.

54.     On May 4, 2019, Plaintiff applied for the Store Manager position in District M.   That same day, he sent an email to Harrington, the new District Manager in District M, expressing his interest in the role and requesting a meeting with him.

55.     Plaintiff never heard anything from Harrington in response to his email.

56.     On May 8, 2019, Plaintiff interviewed for the Store Manager position. Despite being told that he would be placed in that position—without the need for an application process—after interviewing for the position, Plaintiff did not receive that position.   In fact, Plaintiff received no communication whatsoever regarding that position.

57.     On May 17, 2019, Plaintiff received an email from John Branch, District M Merchandising Manager, stating that starting on Monday, May 20, 2019, he would be assigned as an Operations Assistant Store Manager at Store No. 318 (Atlanta) "until further notice."   The email also contained Plaintiff's work schedule for the next week.   Harrington and Hazelon Smith, District M Operations Manager were copied on the email.

58.     After receiving that email, Plaintiff reached out to Henderson who stated that she did not know what was going on, but that she would find out and get back in touch with him.

59.    The next day, on May 18, 2019, Henderson claimed to Plaintiff that he was not being assigned as an Assistant Store Manager and that he was just going to train with the Store Manager to learn the inventory process—contrary to what was stated in the email.

60.    Given it had now been 11 weeks since Plaintiff had been abruptly removed from his District Human Resources Manger position and he was supposed to have been placed as a Store Manager after four weeks of training—and Plaintiff was bouncing around to various stores without any plan for him to receive a permanent Store Manager position—Plaintiff requested a meeting with Henderson for Monday, May 20, 2019.

61.    On May 20, 2019, Plaintiff met with Henderson to discuss his concerns. Specifically, Plaintiff told Henderson that he was frustrated with his current employment situation as he had been abruptly removed from his District Human Resources Manager Position without any performance discussions whatsoever, to being told that he would move into a specific Store Manager role within 4 weeks (6 at the latest), to then being told to apply for that Store Manager role, to being told to report as an Assistant Store Manager role at a different store—a position he had held over 20 years prior.  Plaintiff expressed to Henderson that he was being strung around by Kroger without any plan in place.  Plaintiff also communicated that he

had received no communication from his District Manager, Harrington, despite Plaintiff reaching out to him.  Instead, Harrington appeared to be pushing Plaintiff around from store to store with no permanent position in place.

62.    Henderson told Plaintiff that the plan was for him to run a store, but she was not sure "when and where."

63.    Henderson then asked Plaintiff if he wanted her to try to get him a "package."

64.    The severance package was presented to Plaintiff on May 23, 2019, in a meeting with Henderson and Rebecca Clark, Assistant Human Resources Manager.

65.    During that meeting, Henderson told Plaintiff that he had 21 days to consider the severance package (until June 13, 2019) and that he could use Paid Time Off (PTO) until he made his decision.  Henderson told Plaintiff that if he used all of his PTO before he made his decision "we will work through that."

66.    However, upon his receipt of the severance package, Plaintiff had 18 days of accrued PTO, one day of holiday pay, and four personal days already accrued to him during the 2019 calendar year.  In addition, Plaintiff had four weeks of banked vacation that had rolled over from previous years.

67.     On June 5, 2019—eight days prior to the expiration of the consideration period—Plaintiff's attorney sent a letter alleging claims under the Age Discrimination in Employment Act ("ADEA").

68.     Plaintiff's attorney sent that letter on June 5, 2019, in an email to Henderson, via FedEx to Henderson, and via FedEx to the Company's registered agent.

69.     In that letter, Plaintiff's attorney requested a response to the letter by June 12, 2019—again, within the consideration period.

70.     Kroger did not respond to that letter by June 12, 2019 and on June 13, 2019 at 11:16AM—the deadline by which Plaintiff had to consider the severance agreement—Plaintiff's attorney sent an email to Henderson by email stating the following: "I have confirmation that you received the letter I sent on Mr. Latham's behalf last week, both electronically, and by Federal Express, and that The Kroger Company's registered agent likewise received the letter via Federal Express.  Please advise whether The Kroger Company intends to provide a response to the letter."

71.     Later that day, at 5:06PM, Plaintiff's attorney sent another email that said the following: "Pursuant to your letter enclosing the proposed Waiver, Mr. Latham had twenty-one days (through July 13) to consider the Company's offer. Mr. Latham was mindful of that twenty-one day period, and as a result, I sent a letter

on his behalf on June 6, requesting a response by June 12.  Having heard no response by the requested date, and having heard nothing from you or from the Company following my email this morning, I am sending this letter as notice that Mr. Latham expects that the twenty-one day period will be extended while the parties negotiate a resolution forthwith."

72.     Kroger did not respond to any of the various communication attempts made by Plaintiff's attorney.

73.     Instead, contrary to Henderson's statement that he could use PTO while he considered the severance package, 15 days later, on June 28, 2019, Plaintiff received a Separation Notice stating that he was terminated on June 28, 2019 for "job abandonment."

74.     Kroger never notified Plaintiff that he had to return to work to avoid termination for job abandonment.  In fact, there was no attempt to contact Plaintiff, or his counsel, during the consideration period despite repeated requests for communications.

75.     Concurrent with Plaintiff's receipt of the Separation Notice, Plaintiff received a check for four weeks (20 days) of accrued but unused PTO.

76.     Rather than negotiate with Plaintiff, or at a minimum, tell Plaintiff that it would not budge on the severance agreement and that he needed to return to work

if he did not sign the agreement, Kroger retaliated against Plaintiff by terminating his employment for complaining about age discrimination.

77.     Plaintiff was replaced by a younger female, Melissa Singletary, who is more than 20 years younger than Plaintiff.

## COUNT I
### Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

78.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

79.     Plaintiff is 57 years old.

80.     At all relevant times, Plaintiff was an "employee" of Defendant Kroger as that term is defined by the ADEA.

81.     At all relevant times, Defendant Kroger was an "employer" as that term is defined by the ADEA.

82.     At the time of his termination, Plaintiff was more than qualified for the position he held based on his record of performance and length of service.

83.     Plaintiff's supervisors harbored a discriminatory animus toward older employees.

84.     In fact, there was a push to terminate older employees and promote younger employees.

85.    Defendant Kroger discriminated against Plaintiff in violation of the ADEA by taking adverse actions against him, including but not limited to: (a) demoting him to Store Manager and then Assistant Store Manager, which negatively impacted his income potential and ability to find future employment both in and out of the Company; (b) failing to place Plaintiff in an open position; and (c) terminating his employment and replacing him with a younger employee.

86.    In so doing, Defendant Kroger knowingly and intentionally discriminated against Plaintiff on account of his age in violation of the ADEA.

87.    Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statues providing remedies for violations of the ADEA.

**COUNT II**
**Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.***

88.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

89.    Plaintiff complained of statutorily protected activity by objecting to and complaining about age discrimination prohibited by 29 U.S.C. § 621 *et seq.*

90.     Defendant Kroger subjected Plaintiff to retaliation because he opposed, objected to, and complained about illegal age discrimination by terminating his employment.

91.     The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of 29 U.S.C. § 621 *et seq.*

92.     As a direct and proximate result of Defendant Kroger's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

93.     Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff.

94.     Defendant's actions were reckless and were taken in willful disregard of the probably consequences of its actions.

95.     Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, compensatory damages, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statues providing remedies for violations of the ADEA.

## COUNT III

**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.***

96.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

97.     Plaintiff is a member of a protected class in that he is male.

98.     At all relevant times, Plaintiff was an "employee" of Defendant Kroger as that term is defined by Title VII, 42 U.S.C. §2000e *et seq.*

99.     At all relevant times, Defendant Kroger was an "employer" as that term is defined by Title VII, 42 U.S.C. §2000e *et seq.*

100.    Defendant Kroger discriminated against Plaintiff based on his gender in violation of Title VII by taking adverse actions against him, including but not limited to: (a) demoting him to Store Manager and then Assistant Store Manager, which negatively impacted his income potential and ability to find future employment both in and out of the Company; (b) failing to place Plaintiff in an open position; and (c) terminating his employment and replacing him with a female employee.

101.    Defendant Kroger lacks any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or such purported justifications are mere pretext for gender discrimination.

102.   The above-pled actions of Defendant Kroger constitute gender discrimination in violation of Title VII.

103.   The actions of Defendant Kroger in subjecting Plaintiff to the above-pled adverse actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of his federally protected rights.

104.   Plaintiff's gender was a motivating factor in the decisions by Kroger to subject him to discrimination on the basis of his gender as pled above, even if gender was not the sole factor that motivated the decision of Defendant to subject Plaintiff to gender discrimination.

105.   As a direct and proximate cause of Defendant's unlawful employment actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

106.   Plaintiff is entitled to recover his lost wages and economic benefits of his employment, compensatory damages for emotional distress, front pay, and all other legal and equitable remedies provided for by Title VII and all statutes providing for relief for violations of Title VII.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) declare that Defendant has violated Plaintiff's rights under the federal statutes listed above;

(b) permanently enjoin Defendant from violating, in the future, Plaintiff's rights under the federal statutes listed above;

(c) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d) award Plaintiff prejudgment interest as required by law;

(e) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(f) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(g) award Plaintiff punitive damages, against Defendant sufficient to punish it for its unlawful conduct and deter it from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(h) award Plaintiff reasonable attorneys' fees and expenses; and

(i) grant such additional relief as may be just.

Respectfully submitted, this 9th day of February, 2022.

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973
jackie@leelawga.com

**COUNSEL FOR PLAINTIFF**